UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

:

GEORGE OLSON,

:

:

Petitioner,        :

:

v.                     :

:

SUPERINTENDENT CONNOLLY,        :

*Superintendent of Fishkill Correctional*        :
*Facility*,

:

:

Respondent.   :

:

------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: <u>October 13, 2016</u>

15 Civ. 6498 (KPF) (SJN)

OPINION AND ORDER
ADOPTING AMENDED
REPORT AND
<u>RECOMMENDATION</u>

KATHERINE POLK FAILLA, District Judge:

Petitioner George Olson ("Petitioner"), who is proceeding *pro se* and is currently incarcerated, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition" or "Pet.") on August 18, 2015, against Superintendent William Connolly of the Fishkill Correctional Facility in Beacon, New York.[1]  In it, Petitioner seeks review of his New York State Supreme Court convictions for two counts of burglary in the third degree, in violation of New York Penal Law ("NYPL") § 140.20.  United States Magistrate Judge Sarah Netburn issued an Amended Report and Recommendation dated April 15, 2016 (the "Amended Report" or "Am. Report"), recommending that the Petition be denied.  The Court has considered both the Amended Report and Petitioner's May 11, 2016 Objection to the Report (the "Objection" or "Obj."), and finds that

---

[1]     In August 2015, Connolly was replaced by Robert Cunningham as Superintendent of the Fishkill Correctional Facility.

the Amended Report should be adopted in full.  Accordingly, the Petition is denied.

## BACKGROUND[2]

The facts and procedural history of the instant action are set forth in the Amended Report.  (Dkt. #20).  Nonetheless, a brief summary of the relevant facts is useful to this Court's analysis.

Petitioner was arrested after being identified as the perpetrator of one or more burglaries that took place on April 24 and 25, 2010, at 201 West 95th Street in Manhattan.  (SR 1-3).  Two criminal complaints, the first sworn out on April 30, 2010, and the second sworn out on October 4, 2010, addressed Petitioner's conduct that evening.  In the first complaint, Petitioner is alleged to have broken into a restaurant on the premises on April 25, 2010, and stolen a cash register drawer, a key ring, and multiple credit cards.  (*Id.* at 2). Surveillance footage revealed that Petitioner had broken into the restaurant the preceding day; unlawfully accessed multiple employee lockers and a walk-in refrigerator; and stolen "a bottle of wine, a bouquet of roses and a calculator." (*Id.* at 3).  In the second complaint, Petitioner is alleged to have entered a youth hostel at that same location on April 24, 2010, without permission to enter or

---

[2]     In addition to citing the Petition (Dkt. #1), the State's Opposition ("Opp.," Dkt. #9-10), Petitioner's Reply ("Reply," Dkt. #15), the Amended Report (Dkt. #20), and Petitioner's Objection (Dkt. #22), this Opinion draws on information from the State Record ("SR [page]," Dkt. #10), with citations corresponding to the State's Bates numbers.  The Court previously received an initial Report and Recommendation (Dkt. #16), and objections to that Report from the State (Dkt. #18).  In light of the Report's amendment in response to the State's objections and the Court's subsequent receipt of objections from Petitioner alone, the Court limits its evaluation to the Amended Report.

remain, after which he went into the hostel's basement, which was "off-limits to all persons other than hostel employees." (*Id.* at 3).

The two complaints were resolved in a single indictment (the "Indictment"), charging Petitioner with one count of second-degree burglary, in violation of NYPL § 140.25(2),[3] and one count of third-degree burglary, in violation of NYPL § 140.20.[4]  The indictment was not clear that the two counts pertained to different "buildings" at the same address.  (Am. Report 2; SR 4-5). *See* N.Y. Penal Law § 140.00 (McKinney) (defining "building" to include separately enclosed units within a single structure).

Significantly, had Petitioner been convicted of second-degree burglary, he would have been deemed a mandatory persistent violent felony offender under New York law, subject to a minimum sentence of 16 years' to life imprisonment.  (SR 62).  Pursuant to negotiations between Petitioner's trial counsel and the prosecution, however, Petitioner was permitted to plead guilty to two counts of third-degree burglary — the aggregate prison term of which was substantially less than 16 years to life — and the prosecution dismissed the second-degree burglary charge.  (Am. Report 2).  To accomplish this plea bargain, on October 13, 2010, the prosecution filed a Superior Court Information ("SCI") that charged Petitioner with third-degree burglary; the SCI

---

[3]    *See* N.Y. Penal Law § 140.25(2) (McKinney) ("A person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when: . . . 2. The building is a dwelling.").

[4]    *See* N.Y. Penal Law § 140.20 (McKinney) ("A person is guilty of burglary in the third degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein.").

stated, in relevant part, that Petitioner had "knowingly entered and remained unlawfully in a building, the Westside Pearl Youth Hostel, located at 201 West 95th Street with intent to commit a crime therein."  (SR 7).

Also on October 13, 2010, Petitioner waived indictment and pleaded guilty to two counts of third-degree burglary, one of which was specified in the indictment and the other of which was specified in the SCI.  (SR 8-17).  During the plea colloquy, Petitioner confirmed that he was pleading guilty to a burglary "ha[ving] to do with the Westside Pearl Youth Hostel," in addition to "another charge against [him] for the same date and same address which ha[d] to do with a restaurant next door, or at the same address, but a different enclosure." (Am. Report 2-3 (citing SR 11-12)).

The factual allocution of Petitioner's plea proceeded as follows:

> THE COURT: [ . . . ] So, Mr. Olson, on April 24, 2010 at 201 West 95th Street, you went into the basement at that address?
>
> THE DEFENDANT: Yes.
>
> THE COURT:  And you knew you weren't supposed to go in there.
>
> THE DEFENDANT: Yes.
>
> THE COURT:  How did you know that?
>
> THE DEFENDANT: I guess I had no business being there.
>
> [ . . . ]
>
> THE COURT:  Now, did you go down into the basement through the youth hostel?
>
> THE DEFENDANT:  I didn't know it was a youth hostel. When you first walk in the entrance, there's a desk

> there. Then the basement is right there…. The basement is all restaurant equipment. It's all connected to the restaurant on the side.
>
> THE COURT: Well, you went into the basement through the youth hostel, that you may not have known it was a youth hostel.
>
> THE DEFENDANT: Yes.
>
> THE COURT: Then you went to the restaurant side of the basement.
>
> THE DEFENDANT: Right.
>
> THE COURT: And you went into the youth hostel side of the basement to see if there was anything down there, and then you went over into the other basement, right?
>
> THE DEFENDANT: Well, yeah, it's all connected.

(SR 12-14). The trial court adjudicated Petitioner a predicate felony offender; the court also explained that each count of conviction carried a minimum sentence of two to four years and a maximum sentence of three-and-one-half to seven years, the terms of which would be consecutive because Petitioner faced "two separate counts of burglary, because of the two locations that you went into unlawfully with the intent to commit a crime." (*Id.* at 14-15). Petitioner confirmed his understanding. (*Id.* at 16). The court also emphasized that Petitioner could face a life sentence were he convicted of second-degree burglary, and asked whether Petitioner "underst[ood] that this [was] a great degree of leniency that[] [was] being extended to [him]"; Petitioner again confirmed he understood. (*Id.* at 15). The court then accepted Petitioner's plea. (*Id.* at 17).

On October 27, 2010, Petitioner was sentenced principally to the agreed-upon sentence of two consecutive terms of three and one-half to seven years' imprisonment.  (SR 18-20).

Petitioner appealed from his sentence, contending that it violated the constitutional prohibition against double jeopardy, in that he was convicted of two crimes arising from the same unlawful entry.  (Am. Report 4).  In an opinion issued April 1, 2014, the Appellate Division held that Petitioner's claim was "unpreserved and waived," and, alternatively, that Petitioner had "made successful unlawful entries into two places, each constituting a separate and distinct 'building' under the definition contained in NYPL § 140.00(2), and thus committed two separate crimes."  (*Id.* (citing *People* v. *Olson*, 982 N.Y.S.2d 760, 760 (1st Dep't 2014); *see also* SR 89-90).  Petitioner's appellate counsel submitted a leave application to the Court of Appeals (SR 91-97), and Petitioner filed a *pro se* supplemental letter raising his double jeopardy claim (*id.* at 98-99).  By order dated August 12, 2014, the Court of Appeals denied leave to appeal.  (*Id.* at 106).[5]

---

[5]    Separately, Petitioner filed a petition for a writ of error coram nobis, asserting that his appellate counsel had been ineffective by virtue of (i) raising a multiplicity claim, which Petitioner contended undermined his constitutional double jeopardy claim; and (ii) failing to argue the unconstitutionality of the preservation requirement as applied to Petitioner's case.  (SR 107-18).  Petitioner's application was denied (*id.* at 147), and leave to appeal was also denied (*id.* at 155).

## THE STANDARD OF REVIEW

A court may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Grassia* v. *Scully*, 892 F.2d 16, 19 (2d Cir. 1989). A court may accept those portions of a report to which no "specific, written objection is made," as long as the factual and legal bases supporting the findings are not clearly erroneous. *See Greene* v. *WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997) (quoting Fed. R. Civ. P. 72(b)); *see also Thomas* v. *Arn*, 474 U.S. 140, 149 (1985). A magistrate judge's decision is clearly erroneous only if the district court is "left with the definite and firm conviction that a mistake has been committed." *Easley* v. *Cromartie*, 532 U.S. 234, 235, 242 (2001) (quoting *United States* v. *U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

To the extent that a petitioner makes specific objections to a magistrate judge's findings, the reviewing court must undertake a *de novo* review of the objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *United States* v. *Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). *Pro se* filings are read liberally and interpreted "to raise the strongest arguments that they suggest." *Pabon* v. *Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (internal quotation marks and citation omitted). However, where objections are "conclusory or general," or where the petitioner "simply reiterates his original arguments," the report should be reviewed only for clear error. *Walker* v. *Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002) (internal quotation marks and citation omitted).

## DISCUSSION

### A.    Olson's Petition for Habeas Relief

Petitioner claims that his "[t]wo burglary convictions violated the prohibition against multiple punishments for the same offense under the U.S. Constitutional Double Jeopardy Clause." (Pet. 5).  As Petitioner argues, the charging documents and plea allocution establish only a single offense of burglary, yet "the prosecutor created two separate burglaries of the single entry into the one basement that had no dividing walls." (*Id.* at 5, 15).  Petitioner further states that the Appellate Division's application of *People* v. *Gonzalez*, 99 N.Y.2d 76, 82 (2002), to his case to find procedural bar was in error, as *Gonzalez* speaks only to cases where defendants received concurrent sentences, "eliminat[ing] any issue of multiple punishments." (*Id.* at 16). Petitioner argues that his case does not present the "question[s] of statutory interpretation" requiring preservation that are referenced by the Court of Appeals in *Gonzalez*. (*Id.*).  Additionally, citing *United States* v. *Broce*, 488 U.S. 563 (1989), and *Menna* v. *New York*, 423 U.S. 61 (1975), Petitioner contends that a double jeopardy violation in his case was apparent from the face of the record when his plea was entered, and thus preservation was not required and no waiver could be had.  (*Id.*).

Separately, Petitioner contends that the Appellate Division erred in "not clarify[ing] what areas they were deciding appellant plead[ed] guilty to burglarizing," in that the prosecutor and Petitioner contradicted each other as to the relevant burglarized areas. (Pet. 16).  As Petitioner further states, a

guilty plea to burglarizing a basement with "two sides" would be invalid, as the record made clear that the basement was "a single, undivided unit, which could be accessed by both the restaurant and hostel." (*Id.*).  Indeed, Petitioner argues that during his direct appeal, Respondent "conceded that the basement was only one burglary by arguing that the initial entry into the lobby was considered a separate burglary," but the Appellate Division did not clarify whether they adopted this formulation of the two burglaries, or whether they considered the burglary of the basement to constitute two separate crimes. (*Id.* at 17).  Petitioner contends that the prior formulation would be legally erroneous, as the lobby "was open to the public" and thus any entry could not underlie a burglary charge. (*Id.*).  In any event, Petitioner states, he did not plead guilty to an unlawful entry into the lobby. (*Id.*).

**B.    The Amended Report**

In the Amended Report, Judge Netburn recounted the procedural history of Petitioner's criminal case, including the substance of the charging documents, Petitioner's guilty plea proceeding, and Petitioner's direct appeal. (Am. Report 1-4).  Judge Netburn then determined that Petitioner's claim was procedurally barred based on the New York Court of Appeals' preservation requirement for double jeopardy claims alleging "multiple punishments for the same offense." (*Id.* at 6 (citing *Gonzalez*, 99 N.Y.2d at 82)).[6]  Because this rule

---

[6]     *See People* v. *Gonzalez*, 99 N.Y.2d 76, 82 (2002):

> The Double Jeopardy Clause consists of three separate guarantees:
> [i] "It protects against a second prosecution for the same offense
> after acquittal.  [ii] It protects against a second prosecution for the

is consistently followed by New York State courts, Petitioner's claim was barred by an adequate and independent state law ground.  (Am. Report 6-7).

Progressing to a review of the merits of Petitioner's claim, Judge Netburn concluded that the state court's determination was not an unreasonable application of federal law: Petitioner "validly entered a guilty plea, [so] he essentially [ ] admitted he committed the crime charged against him, [which] results in a waiver of double jeopardy claims."  (Am. Report 7-8 (citing *United States* v. *Kurti*, 427 F.3d 159, 162 (2d Cir. 2005)).  Judge Netburn concluded that Petitioner's "plea colloquy made clear that he understood that he was pleading guilty to two separate crimes, charged in two separate charging instruments."  (Am. Report 9).

With particular respect to Petitioner's argument concerning the exception articulated in *Menna*, 423 U.S. at 62 n.2, for a charge that "judged on its face [ ] is one which the State may not constitutionally prosecute," Judge Netburn determined that "[t]he charging documents were facially valid," and the criminal complaint "ma[de] clear that each charge refer[red] to separately occupied units — the hostel and the restaurant," and Petitioner therefore made separate unlawful entries into the hostel, its basement, and the adjacent restaurant basement.  (Am. Report 9-10).  Moreover, as stated in the Amended Report, "[i]f the record showed that Olson did not understand that he made two

---

same offense after conviction.  [iii] And it protects against multiple punishments for the same offense".

*Id.* (quoting *North Carolina* v. *Pearce*, 395 U.S. 711, 717 (1969)) (alterations added); *accord Illinois* v. *Vitale*, 447 U.S. 410, 415 (1980).

separate unlawful entries, then he might be entitled to argue that his plea was not made knowingly." (*Id.* at 10).  Here, by contrast, it was obvious that Petitioner's arguments were strategic — he deliberately refrained from seeking a vacatur of his plea "because he does not want his plea revoked, which would expose him to a renewed second degree burglary charge." (*Id.*).

### C.   Petitioner Is Not Entitled to Habeas Relief[7]

#### 1.   Petitioner's Claim Is Procedurally Barred

Federal courts are generally not permitted to "review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone* v. *Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman* v. *Thompson*, 501 U.S. 722, 729 (1991)).  The procedural bar applies even if the state court addressed the merits of the claim in the alternative. *Velasquez* v. *Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990) (per curiam).

A state law ground is deemed "adequate" if the rule "is firmly established and regularly followed by the state in question."  *Whitley* v. *Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (quoting *Garcia* v. *Lewis*, 188 F.3d 71, 77 (2d Cir. 1999)).  The Second Circuit has repeatedly found that New York's contemporaneous objection rule, N.Y. Crim. Pro. Law § 470.05(2),[8] is an

---

[7]   As a factual matter, Petitioner's objection to "page 2, para. 2 of the Report which views the original indictment as being clear that the two burglaries were against different businesses" (Pet. Obj. 2), reflects a misreading of the Amended Report, which in fact states that "[t]he indictment *did not* make clear that the two burglaries were against different businesses" (Am. Report 2 (emphasis added)).

[8]   *See* N.Y. Crim. Proc. Law  § 470.05(2):

adequate and independent bar to federal habeas review.  *See, e.g.*, *Whitley*, 642 F.3d at 292; *Downs* v. *Lape*, 657 F.3d 97, 104 (2d Cir. 2011); *see generally Garcia*, 188 F.3d at 79 ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules.").

Claims that are subject to a procedural bar may be addressed only if the petitioner demonstrates cause for the default and resulting prejudice, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Harris* v. *Reed*, 489 U.S. 255, 262 (1989).  Petitioner here does neither, but rather challenges the Appellate Division's (and Judge Netburn's) interpretation of the relevant case law, and, more specifically, the cases on which they relied in finding New York's contemporaneous objection rule to have applied: Petitioner argues that these cases are inapposite because the defendants there received concurrent, rather than consecutive, sentences.  (Pet. Obj. 1).

Petitioner is correct that certain of those cases referenced the defendants' receipt of concurrent sentences as additional confirmation that a "multiple

---

For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.  Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in [response] to a protest by a party, the court expressly decided the question raised on appeal.  In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered.

12

punishments" situation was not at issue.  *See, e.g.*, *People* v. *Gonzalez*, 279 A.D.2d 273, 274 (1st Dep't 2001), *aff'd*, 99 N.Y.2d 76 (2002).  His argument, however, overlooks the independent determination of the Appellate Division that Gonzalez's claim fit within the bounds of the contemporaneous objection rule as it applied to the third category of double jeopardy claims — those asserting claims for multiple punishments, which that court found must be preserved — and thus that its decision did not rest on Gonzalez's receipt of concurrent sentences.  *See Gonzalez*, 279 A.D.2d at 274 ("The prohibition against double jeopardy is not implicated when a defendant receives cumulative or multiple punishments for the same offense in a single prosecution as opposed to successive prosecutions.... *Moreover*, [defendant] received concurrent sentences, thereby eliminating any issue of multiple punishments." (internal citation omitted) (emphasis added)).

The Court of Appeals' affirmance of the *Gonzalez* case articulated the contemporaneous objection rule in a manner that likewise did not hinge on the concurrence *vel non* of the defendant's sentences:

> These cases, as contrasted with [retrial after conviction or retrial after acquittal], turn not on the jurisdiction or authority of the court but on whether the Legislature intended to authorize such multiple punishments.  That question may only be reached following a threshold determination of what punishments the Legislative Branch has authorized.  As long as the Legislature intended to impose cumulative punishments for a single offense, a court's task of statutory construction is at an end and no constitutional double jeopardy claim is implicated.

> Since the permissibility of multiple punishments in this situation presents a question of statutory interpretation, a defendant is required to preserve such a claim.

*Gonzalez*, 99 N.Y.2d at 82-83.  Petitioner's case fits squarely within the language and the spirit of this rule.[9]  Although he cites his "multiple punishments" as a concern not arising in cases involving concurrent terms (Pet. Obj. 1), the very rule articulated in *Gonzalez* references "multiple punishments ... [as] a question of statutory interpretation" that must be preserved, *see Gonzalez*, 99 N.Y.2d at 82-83.  Accordingly, Petitioner cannot distinguish his case from the independent and adequate state ground — the contemporaneous objection rule as applied to double jeopardy claims asserting multiple punishments.  This firmly established rule applies, and Petitioner's double jeopardy claim is procedurally barred.

### 2.    Petitioner's Claim Fails on the Merits

The Appellate Division also rejected Petitioner's double jeopardy claim on the merits; Judge Netburn considered them in the Amended Report, and this Court considers them as well.  Habeas relief is warranted only if the Appellate

---

[9]    On the latter point, the Second Circuit has observed that the contemporaneous objection rule

> has been interpreted by New York courts to require, at the very least, that any matter which a party wishes to preserve for appellate review be brought to the attention of the trial court at a time and in a way that gave it the opportunity to remedy the problem and thereby avert reversible error.

*Whitley* v. *Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (internal quotation marks and alteration omitted).  Here, Petitioner's strategic decision not to raise a concern that the plea bargain offered by the State would subject him to multiple convictions for a single burglary deprived the trial court of an opportunity to delve into Petitioner's concerns about the factual circumstances of each unlawful entry in an effort to clarify any issues.

Division's ruling was either: (i) contrary to Supreme Court precedent; or (ii) a misapplication thereof.  28 U.S.C. § 2254(d).  Here, Petitioner focuses on the Appellate Division's finding that he pleaded to "successive unlawful entries into two places" (SR 90), and on the record evidence that courts, particularly this Court, may consider in making that determination.

Bound up in an evaluation of the merits of Petitioner's claim is the issue of waiver, and for this reason they are discussed together.  "[T]he rights afforded by the Double Jeopardy Clause are personal and can be waived by a defendant."  *United States* v. *Mortimer*, 52 F.3d 429, 435 (2d Cir. 1995).  That said, a "narrow exception to the waiver rule" applies "when a double jeopardy claim is so apparent either on the face of the indictment or on the record existing at the time of the plea that the presiding judge should have noticed it and rejected the defendant's offer to plead guilty to both charges." *Kurti*, 427 F.3d at 162.  In other words, unless it is obvious that Petitioner could not plead guilty to the charges in both the Indictment and the SCI, he has waived his right to raise a double jeopardy claim.

Petitioner's gripe is less with this principle of law than with the documents a court may consider in evaluating whether a putative waiver is valid, or whether multiple charges are in fact barred by the Double Jeopardy Clause.  He takes issue with the Amended Report's interpretation of the Supreme Court's statement in *Menna*, 423 U.S. at 62 n.2, that "[a] guilty plea … renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not

15

stand in the way of factual guilt if validly established." *Id.*; *see also id.* ("We do not hold that a double jeopardy claim may never be waived.  We simply hold that a plea of guilty to a charge does not waive a claim that judged on its face the charge is one which the State may not prosecute.").  Specifically, Petitioner argues that both federal and New York State case law counsel courts to evaluate whether a "charge is one which the State may not prosecute" by looking to *both* the charging documents and the record at the plea hearing (Pet. Obj. 1-2), whereas the Amended Report stated that "[c]ontrolling Supreme Court case law instructs a court to look to the jurisdictional sufficiency of the charging instruments when judging [Petitioner's] double jeopardy claim, and his plea allocution is irrelevant" (Am. Report 10 (citing *Menna*, 423 U.S. at 62 n.2)).

While this Court finds *Menna* somewhat unclear on this point, in a later case on the subject, the Supreme Court indicated that a "determination that the second indictment could not go forward should have been made by the presiding judge *at the time the plea was entered on the basis of the existing record.*"  *Broce*, 488 U.S. at 575 (emphasis added).  The *Broce* Court recounted two prior decisions:  (i) the *Menna* Court's determination that the indictment there 'was facially duplicative of [an] earlier offense," thus prohibiting the State from pursuing that charge, in addition to (ii) the Court's earlier decision in *Blackledge* v. *Perry*, 417 U.S. 21 (1974), which determined that "the concessions implicit in the defendant's guilty plea were irrelevant [there], because the constitutional infirmity ... lay in the State's power to bring any

16

indictment at all." *Id.* at 575-76.  Then, examining the underlying proceedings in *Broce*, the Court found that the "indictments [ ] on their face described separate conspiracies," obviating double jeopardy concerns.  *Id.* at 576.  Thus, neither in *Broce* nor in the cases it examined were the trial courts required to look outside the charging documents, and the *Broce* Court in fact stated that "[j]ust as a defendant who pleads guilty to a single count admits guilt to the specified offense, so too does a defendant who pleads guilty to two counts with facial allegations of distinct offenses concede that he has committed two separate crimes." *Id.* at 570.

The quoted passages suggest, as Judge Netburn found, that the Court should look only to the charging documents.  Nonetheless, because it has some merit, the Court will consider Petitioner's argument that the term "existing record" also encompasses his plea proceedings.  *See Kurti*, 427 F.3d at 162 (interpreting *Broce* to permit consideration of both documents and plea minutes).  Relatedly, the Court has considered Petitioner's contention that the Court may look only to the Indictment and the SCI — the documents containing the charges to which he pleaded — rather than the criminal complaint referenced by the Amended Report.  (Pet. Obj. 2-3).  Again, in an abundance of caution, the Court will evaluate Petitioner's double jeopardy arguments by consulting only the Indictment, the SCI, and the record of Petitioner's plea hearing.  However, even on this record, the Court concurs with the conclusion found in the Amended Report that the Appellate Division's decision was not contrary to law.

While neither the Indictment nor the SCI explicitly references the restaurant basement, Petitioner's plea colloquy evinces his full awareness that he was pleading to separate charges of burglarizing the hostel and the restaurant basement, and why he was so pleading.  For starters, Petitioner pleaded guilty to charges in two separate charging instruments; with respect to the SCI, he was specifically allocuted on his waiver of the right to proceed by indictment on this separate charge.  (SR 9-11).  As the colloquy proceeded, when asked how he pleaded to the first charge of burglary at the Westside Pearl Youth Hostel, Petitioner stated that he pleaded guilty.  (*Id.* at 11-12).  Then, when asked about the second charge, relating to "the same date and same address which has to do with a restaurant next door, or at the same address, but a different enclosure," Petitioner again stated that he pleaded guilty.  (*Id.* at 12).  In the face of this clarity — underscored by the trial court's reference to the generous plea bargain offered by the prosecution, which was termed "a great degree of leniency" (*see id.* at 15) — Petitioner now presses that his factual allocution demonstrates that the two burglary charges subjected him to double jeopardy (Pet. Obj. 3).  As Petitioner argues, his allocution shows that "the basement was one interrupted space," and accordingly, Petitioner could commit only one burglary.  (*Id.*).  From this he argues that he could not constitutionally plead guilty to both the Indictment and the SCI, and that he further could not waive any double jeopardy claim inhering in his plea.

Petitioner is wrong.  His plea allocution does not definitively show that the charges were duplicative ones that the State could not bring.  Although

Petitioner stated that the basement was "all restaurant equipment" and that it was "all connected," he simultaneously admitted that he "went into the basement through that youth hostel," where he "had no business being," and that after entering, he "went to the restaurant side of the basement." (SR 12-14). Moreover, when asked whether he "went into the youth hostel side of the basement to see if there was anything down there, and then [ ] went over into the other basement," Petitioner responded, "[w]ell, yeah, it's all connected." (*Id.* at 14).

Petitioner's allocution does not leave this Court with a firm conviction that the Appellate Division's reasoning was "contrary to, or involved an unreasonable application of, clearly established federal law," 28 U.S.C. § 2254(d), insofar as it found Petitioner "made successive unlawful entries into two places." (SR 89-90). Rather, the Court understands Petitioner's statements about finding restaurant equipment in the basement and that the hostel and restaurant portions of the basement to have been "connected" *not* to have eliminated the possibility that the two sides of the basement had separate entries or were separate enclosures, albeit "connected." Such a finding would comport with the New York Penal Law's definition, which states that "[w]here a building consists of two or more units separately secured or occupied, each unit shall be deemed both a separate building in itself and a part of the main building." NYPL § 140.00(2). Insofar as Petitioner contends that the hostel was not using the basement area for carrying on business, which he alleges would exclude it from the definition of a building, such contention would require

19

resort to evidence outside the record, which is not appropriate at this stage. Accordingly, the Appellate Division's determination is not clearly contrary to *Menna*'s proscription of charges that could not go forward on the basis of the existing record.[10]  For all of these reasons, the Appellate Division's determinations that (i) Petitioner had waived his right to bring a double jeopardy challenge, and (ii) there was no constitutional violation in his pleas to both the Indictment and the SCI will be upheld.

## CONCLUSION

For the foregoing reasons, the Amended Report is adopted in full, and the Petition is DENIED.  The Clerk of Court shall dismiss the Petition and close the case.

Since Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.  *See* 28 U.S.C. § 2253(c).  Pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal.  *Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

---

[10]     In light of the Court's determination that Petitioner's entry into and burglary of the basement amounted to separate crimes, as evidenced by his plea colloquy, the Court need not consider Petitioner's contention regarding whether the hostel's lobby was open to the public. (*See* Pet. Obj. 2-3).  The Court notes, however, that such determination would require resort to evidence outside the record at the time of the plea proceeding, which would not be appropriate under *Menna* and *Broce*.

SO ORDERED.

Dated:       October 13, 2016
             New York, New York

_____
          KATHERINE POLK FAILLA
          United States District Judge


*Sent by First Class Mail to:*

George Olson
10-A-5225
Fishkill Correctional Facility
P.O. Box 1245
Beacon, NY 12508